Mike A. Ortega
Powley & Gibson, P.C.
60 Hudson St., Suite 2203
New York, NY 10013
(212) 226-5054

*Attorney for Yangjiang Xinte Sports Technology
Products Co., Ltd.*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Yangjiang Xinte Sports Technology Products Co., Ltd., <br><br> Plaintiff, <br><br> v. <br><br> Telebrands Corp., <br><br> Defendant. | Case No. _____ <br><br> COMPLAINT AND DEMAND FOR JURY TRIAL |

## COMPLAINT

Plaintiff Yangjiang Xinte Sports Technology Products Co., Ltd. ("Xinte") is a Chinese corporation with a principal place of business in Yangjiang City, Guangdong Province, China. Defendant Telebrands Corp. ("Telebrands") is a New Jersey corporation with a principal place of business in Fairfield, New Jersey. Xinte, as and for its Complaint against Telebrands alleges as follows:

### NATURE OF THE ACTION

1.     This is a civil action arising under the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. and the Patent Laws of the United States, 35 U.S.C. § 1 et seq. for declaratory judgment of non-infringement and invalidity of U.S. Patent Number 10,174,870 (the '870 Patent) (attached as Exhibit 1) and U.S. Patent Number 11,608,915 (the '915 Patent) (attached as Exhibit 2) (collectively, the Telebrands Asserted Patents).

2.    This case also is a civil action for tortious interference with contractual relations and tortious interference with prospective economic advantage under New Jersey common law.

3.    Xinte brings the declaratory judgment action in view of the actual controversy that Telebrands has created under the Telebrands Asserted Patents by asserting dozens of objectively baseless patent infringement claims against retailers (Xinte's customers) who sell Xinte's garden hose products on Amazon.com (the "Accused Garden Hose Products").

## THE PARTIES

4.    Xinte is a Chinese corporation with a principal place of business in Yangjiang City, Guangdong Province, China.

5.    Xinte manufactures garden hoses and other products that it sells to various retailers.

6.    Upon information and belief, Telebrands is a New Jersey corporation with a principal place of business in Fairfield, New Jersey.

## JURISDICTION AND VENUE

7.    The Court has subject matter jurisdiction over the patent claims in this action under the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and under 28 U.S.C. §§ 1331 and 1338(a) because the action arises under the patent laws of the United States, Title 35 U.S.C. § 1 et seq.

8.    The Court has supplemental subject matter jurisdiction over the New Jersey common law claims for tortious interference with contract and tortious interference with prospective economic advantage under 28 U.S.C. § 1367 because those claims arise under the same common nucleus of facts as the declaratory judgment patent claims.

9.    The Court has personal jurisdiction over Telebrands because, upon information and belief, Telebrands resides in New Jersey and in this district.

10.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because Telebrands resides in this district.

2

## BACKGROUND

**Xinte**

11.     Xinte launched its business on March 20, 2013 as a manufacturer of rubber and latex products.  Over the last 10 years, Xinte has manufactured and sold latex tubes, resistance bands, fitness equipment, latex material products, thermoplastic elastomer products, and garden hoses.

12.     Xinte has two primary sales markets.  Xinte sells component parts to local factory customers in China, which incorporate those components into products that are then sold to retailers.  Xinte also sells products (garden hoses and fitness equipment) directly to retailers who then sell the products on Amazon.

13.     In 2018, Xinte began developing a new type of garden hose product.  Xinte spent approximately 5 years and $2.8 million developing this product, for which it received U.S. Patent No. 11,519,526 (the Xinte '526 Patent). As shown in the FIG. 6 of the Xinte '526 Patent reproduced below, the Xinte Hose has "one elastic inner layer 1, one elastic textile reinforcement layer 2 and one elastic outer layer 3." *See* the Xinte '526 Patent at Col. 7, ll. 51–53. "[T]he elastic textile reinforcement layer has an axial elasticity and a radial constraint force, that allows the elastic textile reinforcement layer automatically elongating and restricts the elastic textile reinforcement later from automatically enlarging under working pressure given by a liquid flowing therethrough." *Id.*, at Col. 8, ll. 3–8.



FIG. 6

14.    Xinte's product is fundamentally different from the garden hose claimed in the Telebrands Asserted Patents.

15.    Xinte created a manufacturing process for its garden hose, which required Xinte to make a substantial capital investment in manufacturing equipment – including for example, a braiding machine, an extrusion molding machine, and a coating machine – as well as testing and packaging equipment.

16.    More specifically, the Xinte hose is made by the following manufacturing process. The inner tube is formed first. The inner tube is then stretched (resulting in a smaller diameter than its natural state) while the elastic textile reinforcement layer is woven around it using a braiding machine. Finally, the rubber outer tube is formed. Due to friction, neither the elastic textile reinforcement layer nor the outer layer can move freely over the inner layer.

17.    According to Xinte's market experiences, the peak sales season of garden hose products in the United States is traditionally from April to August each year. According to Xinte's sales data of previous years, garden hose sales in the United States substantially decrease from September forward.

**The Telebrands Asserted Patents**

18.    Upon information and belief, Telebrands owns a family of patents that includes nine issued patents and two pending applications, including the Telebrands Asserted Patents.

19.    The '870 Patent is a utility patent for an Expandable and Contractible Garden Hose.

20.    The application for the '870 Patent was filed on October 26, 2017.

21.    The '870 Patent issued on January 19, 2019.

22.    The '915 Patent is a utility patent for an Expandable and Contractible Garden Hose.

23.    The application for the '915 Patent was filed on January 11, 2021.

24.    The '915 Patent issued on March 21, 2023.

25.    The '915 Patent is a continuation of U.S. Patent No. 10,890,278, which is a continuation of the '870 Patent.

26.    The Telebrands Asserted Patents share a key characteristic.  In plain English, the claimed invention is a garden hose having two layers.  The inner layer is elastic, and the outer layer is non-elastic.  The inner layer is attached to the outer layer only at the front end and back end of the hose.  Through the remaining length of the hose, the inner and outer layers are unattached and move independently. This characteristic is a fundamental feature of the invention, and the Telebrands Asserted Patents describes that the "garden hose 10" includes an "inner tube 14" and an "outer tube 12" and the inner tube 14 is made from an "elastic" material (*see e.g.*, '870 Patent at column 8, lines 20-21; '915 Patent at column 8, lines 29-30), while the outer tube 12 is made from a "non-elastic" material (*see e.g.*, '870 Patent at column 8, lines 34-35; '915 Patent at column 8, lines 43-44).

27.    In effect, the claimed invention is like a balloon inside a fabric tube.  The balloon (i.e., the flexible "inner tube") is attached to the fabric tube (i.e., the inflexible "outer tube") only

at the ends.  In between, the two tubes are unattached so they can move independently when the hose expands or contracts.  In other words, when the balloon (inner tube) deflates, it contracts and the inelastic fabric bunches up.  As the balloon (inner tube) expands, it causes the fabric to extend and grow taut between the two ends where the balloon (inner tube) and the fabric tube are connected.

28.    The Telebrands Asserted Patents explain the purpose for this feature.  In use, when the garden hose 10 of the Telebrands Asserted Patents fills with water:

> the pressure is enough to cause the inner tube 14 to expand laterally and longitudinally until its lateral and longitudinal expansion become constrained by the non-elastic outer tube 12 and expanded to the maximum length and width of the non-elastic outer tube 12.

'870 Patent at column 10, lines 49-53; '915 Patent at column 10, lines 57-61.

29.    The '870 Patent includes two independent claims (claims 1 and 16).

30.    Each independent claim of the '870 Patent requires: (a) an inner tube; and (b) an increase in fluid pressure within the inner tube to expand the inner tube longitudinally along a length of the inner tube and laterally across a width of the inner tube:

- "said increase in fluid pressure expands said inner tube longitudinally along a length of said inner tube and laterally across a width of said inner tube" ['870 Patent, claim 1];

- "an increase in fluid pressure within said expanding hose between said first and second couplers causing said inner tube to expand longitudinally along a length of said inner tube and laterally across a width of said inner tube thereby increasing a length and width of said hose" ['870 Patent, claim 16].

31.    Each independent claim of the '870 Patent requires the inner and outer tubes to only be secured to one another at the ends of the hose:

- "said inner and outer tubes unsecured between said first and second ends so that said outer tube is not held in frictional contact with said inner tube so that said outer tube can move freely along said inner tube" ['870 Patent, claim 1];

- "said inner and said outer tubes being secured to each other only at said first and said second ends and unsecured to each other between said first and said second ends" ['870 Patent, claim 16].

32.    The '915 Patent includes two independent claims (claims 1 and 14).

33.    Each independent claim of the '915 Patent requires: (a) an inner tube; and (b) an increase in fluid pressure within the inner tube to expand the inner tube longitudinally along a length of the inner tube and laterally across a width of the inner tube:

- "said increase in water pressure expands said inner tube longitudinally along a length of said flexible inner tube and laterally across a width of said flexible inner tube" ['915 Patent, claim 1];

- "an increase in water pressure within said expanding hose between said first and second couplers causing said elastic inner tube to expand longitudinally along a length of said elastic inner tube and laterally across a width of said elastic inner tube thereby increasing a length and width of said hose" ['915 Patent, claim 14].

34.    Each independent claim of the '915 Patent requires the inner and outer tubes to only be secured to one another at the ends of the hose:

- "said flexible inner tube unsecured to said flexible outer tube between said first and second ends so that said flexible outer tube can move freely over said flexible inner tube" ['915 Patent, claim 1];

- "said elastic inner tube and said flexible outer tube being secured to each other only at said first and said second ends and unsecured to each other between said first and said second ends" ['915 Patent, claim 14].

**The Accused Garden Hose Products**

35.    The Accused Garden Hose Products are expandable garden hoses having a three-layer structure as described above.

36.     As shown in the cross-section below, the Accused Garden Hose Products include an inner tube, an elastic textile reinforcement layer, and a rubber outer tube. When the hose is subjected to pressure from a liquid inside the inner tube, the tube increases in length (longitudinally), but does not increase in width (laterally).  On the contrary, when the hose is subjected to fluid pressure, the inner tube contracts in width.



37.     As reflected in the photograph below, when water is removed from the hose, the outer tube in the Accused Garden Hose Product is not "folded, compressed and gathered around the outside of the circumference of the inner tube"; *i.e.*, when water is removed, the hose does not visibly shrivel:



38.    When the Accused Garden Hose Products fill with pressurized water, the length of

the hoses increases while the width of the hoses decreases, as reflected in the photographs below:



39.     Because the width of the hose decreases when the Accused Garden Hose Products are filled with pressurized water, the inner tube does not expand laterally across a width of the inner tube when the inner tube is filled with pressurized liquid; thus, the Accused Garden Hose Products do not infringe the Telebrands Asserted Patents. And because the inner and outer tubes of the Accused Garden Hose Products are not only secured to one another at the ends of the hose, the Accused Garden Hose Products do not infringe the Telebrands Asserted Patents.

40.     The hose structure is identical in all of the Accused Garden Hose Products.  These products only vary in hose color, hose length, and the connection components at the ends of the hose.  The hose structure itself is the same on each, as is readily evident by examining a cross-section of any Accused Garden Hose Product.

**Amazon Infringement Proceedings**

41.     Amazon has created its own procedures through which patent owners may enforce their patent rights in the Amazon marketplace.

42.     Under these procedures, a patent owner may file a patent infringement report with Amazon.

43.     Amazon may then invite the patent owner and the accused Amazon seller to engage in a dispute resolution procedure involving an outside "neutral evaluator."

44.     The neutral evaluator reviews the parties' written submissions addressing whether a single representative claim from the asserted patent is infringed by the accused product.

45.     The neutral evaluator then issues a decision stating that the patent owner either is likely or unlikely to be able to prove his infringement claim.

46.     If the neutral evaluator finds that the patent owner is likely to prove infringement, then Amazon will remove the Amazon listing for the accused product—effectively enjoining the seller from selling the accused product in the Amazon.

47.     This procedure is known as an APEX ("Amazon Patent Evaluation Express") process.

48.     If the patent owner succeeds in the APEX process, Amazon may invite the patent owner to submit infringement reports against other products that are similar in relevant respects to the delisted product in an expedited process that does not involve an APEX evaluation.

49.     In this expedited process, Amazon typically will remove an accused seller's product without first giving the accused seller an opportunity to present a non-infringement defense.

50.     When Amazon delists an accused seller's product under this expedited process, it allows the seller to submit an "appeal" to Amazon in which it can present its non-infringement arguments.

51.     Amazon may respond either by rejecting the appeal or by relisting the accused product.

52.     If Amazon relists the accused product, it provides the patent owner with an opportunity to pursue its infringement claims against these products in a new APEX evaluation.

**Telebrands Asserts the '870 Patent in 2023**

53.     Upon information and belief, between February 2023 and May 2023 – right at the start of the garden hose sales season – Telebrands submitted infringement reports using Amazon's expedited process against approximately a dozen Xinte customers. In its infringement reports, Telebrands asserted that the Accused Garden Hose Products infringed the '870 Patent, and Telebrands asked Amazon to remove the Xinte garden hose listings for these companies.

54. As a result of Telebrands' infringement report, Amazon summarily delisted the product listings for all of the Accused Garden Hose Products sold by those Xinte customers. Several of these customers had multiple listings removed. In this summary removal process, neither Xinte nor its customers had an opportunity to raise non-infringement defenses before Amazon delisted the products.

55. All of those customers notified Xinte of the Amazon delisting and asked Xinte to appeal to Amazon on their behalf to restore the listings.

56. Xinte appealed from Amazon's delisting by submitting an email from its U.S. patent attorney, explaining why the Accused Garden Hose Products could not conceivably infringe the Telebrands Asserted Patents.

57. Amazon eventually relisted the Accused Garden Hose Products for all of those customers.

58. Amazon.com is the primary sales channel through which Xinte's customers sell the Accused Garden Hose Products.

59. Upon information and belief, when Amazon relisted the Accused Garden Hose Products for those customers, it provided Telebrands with an opportunity to pursue its infringement claims against the relisted products using Amazon's APEX Process.

60. In the APEX Process, Telebrands would have been able to present its infringement arguments to a neutral evaluator who would review written submissions and evidence submitted provided by Telebrands and by the accused Xinte customers. The neutral evaluator would have issued a decision addressing whether the Accused Garden Hose Products likely infringe a representative claim of the '870 Patent.

61.     Upon information and belief, Telebrands chose not to initiate the APEX process under the '870 Patent against any of the sellers who initially had their Xinte garden hose delisted at Telebrands' behest.

62.     In short, Telebrands manipulated Amazon's expedited delisting procedure to disrupt the Amazon sales for Xinte's customers, but when the time came to prove their claim, Telebrands went silent.

**Telebrands Asserts the '915 Patent in 2024**

63.     The '915 Patent was issued in March 2023, while Telebrands was asserting the '870 Patent against its competitors on Amazon.

64.     Upon information and belief, between May 2024 and July 2024 – again, during the peak garden hose sales season – Telebrands submitted infringement reports using Amazon's expedited process contending that the Accused Garden Hose Products sold by Xinte's customers infringed the '915 Patent. Telebrands asked Amazon to delist these products.

65.     Upon information and belief, Telebrands asserted infringement claims against over fifty of Xinte customers – nearly Xinte's entire customer base for garden hoses.

66.     As a result of Telebrands' infringement report, Amazon summarily delisted the product listings for all of the Accused Garden Hose Products sold by those customers.  Several of these customers had multiple listings pulled.

67.     In this summary removal process, neither Xinte nor its customers had an opportunity to raise non-infringement defenses before Amazon delisted the products.

68.     The '915 Patent is related to the '870 Patent.

69.     In the '915 Patent, like the '870 Patent, all of the claims require a hose having two layers that are connected at the ends of the hose but in between are unconnected and able to move freely and independently.

70.     The Accused Garden Hose Products do not infringe the '915 Patent claims at least for precisely the same reasons that they do not infringe the '870 Patent.

71.     Of those Xinte customers affected by the Amazon delisting, approximately two dozen appealed with Amazon.

72.     Amazon then relisted the Accused Garden Hose Products for the customers that had appealed.

73.     Telebrands subsequently filed a new batch of Amazon Complaints (again under the '915 Patent) against those products, and Amazon again summarily delisted the product listings for all of the Accused Garden Hose Products sold by those Xinte customers.

74.     The majority of Xinte's customers who have had their product listings removed have halted all orders for the Accused Garden Hose Products.

75.     Upon information and belief, every time Amazon relisted the Accused Garden Hose Products, it provided Telebrands with an opportunity to pursue its infringement claims against these products through an evaluation in Amazon's APEX Process.

76.     Upon information and belief, Telebrands chose not to initiate the APEX process under the '915 Patent against any of Xinte's customers. In short, Telebrands again manipulated Amazon's delisting procedure, during the peak garden hose sales season – this time with a related patent – to disrupt the Amazon sales for Xinte's customers and to disrupt Xinte's business.  But when the time came to back up their claim, Telebrands went silent.

**Telebrands' Tortious Conduct**

77.     Telebrands' actions do not reflect merely a zealous case of patent enforcement.

78.     Telebrands deliberately asserted meritless infringement claims on Amazon to disrupt its competitors' sales, to disrupt its competitors' relationships with Amazon, and to disrupt Xinte's relationship with its garden hose customers, potential customers, and suppliers.

79.     Upon information and belief, Telebrands deliberately abused the Amazon patent enforcement procedures by gaining access to the expedited process and then filing objectively baseless infringement claims against the Accused Garden Hose Products sold on Amazon by various Xinte customers.

80.     Telebrands knew that the expedited Amazon enforcement process would cause Amazon to remove the listings for the Accused Garden Hose Products before Xinte or its customers had a chance to assert any non-infringement defenses or otherwise to challenge Telebrands' sham infringement claims.

81.     Telebrands' groundless patent infringement claims in fact caused Amazon to remove the online listings for the Accused Garden Hose Products, effectively enjoining the sale of all Accused Garden Hose Products on Amazon.com.

82.     Telebrands' actions are inexcusable because Telebrands has no plausible infringement claim under the Telebrands Asserted Patents against the Accused Garden Hose Products.

83.     Telebrands knows that its claims of patent infringement are baseless.

84.     After instigating a summary takedown of Xinte garden hoses listings, Telebrands refused to back up its infringement assertions in an adversarial process in which it would have to explain to a neutral evaluator how it could possibly support its infringement claim.

85.     Telebrands is gaming Amazon's Intellectual Property resolution procedures to block sales of the Accused Garden Hose Products with a sham infringement claim.

86.     As part of its strategy, Telebrands has targeted such a large number of Xinte customers that Xinte cannot defend them all through repeated Amazon appeals.   In effect, Telebrands is subjecting Xinte to a game of whack-a-mole. As of August 17, 2024, as shown in attached Exhibit 3, due to Telebrands' groundless patent infringement claims, at least 140 individual ASIN (Amazon Standard Identification Number) links from at least 50 sellers, all of which are Xinte's customers, are still locked.

87.     Though Telebrands' infringement claims are spurious, Telebrands has succeeded in bogging down Xinte and its customers in Amazon's administrative quagmire.

88.     Telebrands' actions have dealt a devastating blow to Xinte and its customers.

89.     Telebrands has caused dozens of Xinte customers—whose businesses hinge upon Amazon sales—to lose sales and has driven some of those customers out of business entirely.

90.     Correspondingly, Telebrands' actions have interfered with Xinte's relationship with its customers, causing many customers to end their business relationship with Xinte.

91.     Telebrands' actions have disrupted Xinte's sales and customer relationships in its garden hose business, which – until now – has accounted for approximately half of the company's gross revenue.  As a result, Xinte has lost approximately $6 million of sales revenue due in output so far this year.

92.     The dramatic loss in sales has forced Xinte to shut down entirely its production facilities for the Accused Garden Hose Products and has forced Xinte to furlough or lay off hundreds of trained employees—many of whom may be difficult to replace.

93.     Telebrands' actions also have disrupted Xinte's relationship with its suppliers. With sales orders dried up and factory production halted, Xinte is unable to purchase supplies in sufficient volume to maintain its supplier relationships and its preferred pricing.  As its supply costs rise, Xinte will either lose profits or will have to raise the prices for its products—which in turn will harm its ability to compete with market competitors on price.

94.     Likewise, the economic destruction imposed by Telebrands has caused Xinte to suffer cash flow problems that have interfered with Xinte's ability to pay its suppliers—further damaging its supplier relationships and increasing company debt.

95.     The harms that Telebrands is imposing on Xinte have created a downward financial spiral from which Xinte may never recover.

96.     Xinte has invested significant time, money, and employee resources into developing its own garden hose technology, and it currently owns a patent on its unique garden hose product.  As a result, Xinte enjoys a reputation in the market for being an innovative, reliable, and lawful manufacturer.

97.     Telebrands' actions have tarnished Xinte's reputation, causing existing customer to turn away and leading existing and prospective customers to believe that Xinte is a copyist rather than an innovator.

98.     Due to Telebrands' actions, existing and prospective customers view Xinte's products as a risky commodity that may carry with it legal troubles and business disruptions. In short, Telebrands' actions have led customers to question Xinte's reputation as a lawful and reliable supplier.

99.     Telebrands is not engaged in legitimate, albeit zealous, patent enforcement.  It is engaging in sham claims to further an anticompetitive agenda.

**Count I**
**Declaratory Judgment**
**Non-Infringement of the '870 Patent**

100.    The allegations of each of the foregoing paragraphs are incorporated by reference as if fully set forth herein.

101.    Upon information and belief, Telebrands acquired and examined at least one Accused Garden Hose Product sample from each accused Xinte customer before initiating any action under Amazon's patent infringement reporting procedures to enforce the '870 Patent against that customer.

102.    Claims 1 and 16 are the only independent claims in the '870 Patent.

103.    Claim 1 of the '870 Patent requires: (a) "said increase in water pressure expands said inner tube longitudinally along a length of said flexible inner tube and laterally across a width of said flexible inner tube" and (b) "said inner and outer tubes unsecured between said first and second ends so that said outer tube is not held in frictional contact with said inner tube so that said outer tube can move freely along said inner tube".

104.    Claim 16 of the '870 Patent requires: (a) "said increase in water pressure expands said inner tube longitudinally along a length of said flexible inner tube and laterally across a width of said flexible inner tube" and (b) "said inner and said outer tubes being secured to each other only at said first and said second ends and unsecured to each other between said first and said second ends".

105.    All claims of the '870 Patent require said increase in water pressure expands said inner tube longitudinally along a length of said flexible inner tube and laterally across a width of said flexible inner tube.

106.    All claims of the '870 Patent require the inner and outer tubes to only be secured to one another at the ends of the hose.

107.    The Accused Garden Hose Products include an inner tube, which is subjected to pressure from a liquid inside the inner tube, the tube increases in length (longitudinally), but does not increase in width (laterally).  On the contrary, when the hose is subjected to fluid pressure, the inner tube contracts in width. Accordingly, the Accused Garden Hose Products do not infringe any claim of the '870 Patent.

108.    The layers of the  Accused Garden Hose Products are secured to one another over the length of garden hose through friction and are not able to move freely over one another. Accordingly, the Accused Garden Hose Products do not infringe any claim of the '870 Patent.

109.    Telebrands actually knew or reasonably should have known that the Accused Garden Hose Products do not infringe any claim of the '870 Patent.

110.    Xinte seeks a declaration that its Accused Garden Hose Products do not infringe the '870 Patent.

**Count II**
**Declaratory Judgment**
**Non-Infringement of the '915 Patent**

111.    The allegations of each of the foregoing paragraphs are incorporated by reference as if fully set forth herein.

112.    Upon information and belief, Telebrands acquired and examined at least one Accused Garden Hose Product sample from each accused Xinte customer before initiating any action under Amazon's patent infringement reporting procedures to enforce the '915 Patent against that customer.

113.    Claims 1 and 14 are the only independent claims in the '915 Patent.

114.    Claim 1 of the '915 Patent requires: (a) "said increase in water pressure expands said inner tube longitudinally along a length of said flexible inner tube and laterally across a width of said flexible inner tube" and (b) "said flexible inner tube unsecured to said flexible outer tube

between said first and second ends so that said flexible outer tube can move freely over said flexible inner tube".

115.    Claim 14 of the '915 Patent requires: (a) "an increase in water pressure within said expanding hose between said first and second couplers causing said elastic inner tube to expand longitudinally along a length of said elastic inner tube and laterally across a width of said elastic inner tube thereby increasing a length and width of said hose" and (b) "said elastic inner tube and said flexible outer tube being secured to each other only at said first and said second ends and unsecured to each other between said first and said second ends".

116.    All claims of the '915 Patent require said increase in water pressure expands said inner tube longitudinally along a length of said flexible inner tube and laterally across a width of said flexible inner tube.

117.    All claims of the '915 Patent require the inner and outer tubes to only be secured to one another at the ends of the hose.

118.    The Accused Garden Hose Products include an inner tube, which is subjected to pressure from a liquid inside the inner tube, the tube increases in length (longitudinally), but does not increase in width (laterally).  On the contrary, when the hose is subjected to fluid pressure, the inner tube contracts in width. Accordingly, the Accused Garden Hose Products do not infringe any claim of the '915 Patent.

119.    The layers of the Accused Garden Hose Products are secured to one another over the length of garden hose through friction and are not able to move freely over one another. Accordingly, the Accused Garden Hose Products do not infringe any claim of the '915 Patent.

120.    Telebrands actually knew or reasonably should have known that the Accused Garden Hose Products do not infringe any claim of the '915 Patent.

121.   Xinte seeks a declaration that its Accused Garden Hose Products do not infringe the '915 Patent.

## Count III
## Tortious Interference with Contractual Relations

122.   The allegations of each of the foregoing paragraphs are incorporated by reference as if fully set forth herein.

123.   Xinte has a valid and enforceable contractual relationship with the customers that it supplies with the Accused Garden Hose Products.

124.   At the time Telebrands began asserting the '915 Patent in Amazon infringement reports targeting the Accused Garden Hose Products, Xinte had a contractual relationship with approximately fifty customers who purchased those products from Xinte to sell on Amazon.

125.   Upon information and belief, Telebrands know or reasonably should have known that the various customers who sold the Accused Garden Hose Products had a contractual relationship with the same supplier.

126.   Upon information and belief, Telebrands intentionally and improperly interfered with these contractual relationships by asserting baseless infringement claims under the '915 Patent against the Accused Garden Hose Products in expedited Amazon patent infringement enforcement procedures that caused Amazon to remove the customer listings for these products before Xinte or its customers had any opportunity to respond to the infringement claims.

127.   Upon information and belief, Telebrands knew that its actions would disrupt the contractual relationship between the manufacturer of the Accused Garden Hose Products (Xinte) and its customers.

128.   Telebrands' actions in fact disrupted the contractual relationship between Xinte and its customers.  Virtually all of Xinte's customers immediately halted all orders for Accused Garden

Hose Products and effectively prevented both parties from performing their contractual obligations.

129. Telebrands' actions have damaged Xinte in a variety of ways. Because of Telebrands' intentional and improper interference, Xinte (to date) has lost more than $6 million in sales revenue, which in turn has disrupted Xinte's cash flow, its ability to pay its suppliers, its ability to pay its workers, and has damaged its reputation—which will make it far more difficult to recover its lost business.

130. Telebrands' actions constitute tortious interference with contract under New Jersey common law.

## Count IV
## Tortious Interference with Prospective Economic Advantage

131. The allegations of each of the foregoing paragraphs are incorporated by reference as if fully set forth herein.

132. Until Telebrands began asserting the '915 Patent in Amazon infringement reports targeting the Accused Garden Hose Products, Xinte had approximately fifty customers who purchased the Accused Garden Hose Products from Xinte to sell on Amazon.

133. Until Telebrands' infringement reports prompted Amazon to remove the listings for the Accused Garden Hose Products sold by these Xinte customers, Xinte held a reasonable expectation that each of these would continue to purchase Accused Garden Hose Products from Xinte.

134. In the months leading up to these Amazon takedowns, Xinte's sales orders for the Accused Garden Hose Products had been trending upward and showing substantial growth. During this time, Xinte was acquiring new customers and existing customers were increasing their order volume.

135.    As a direct result of Telebrands' objectively baseless infringement reports, Xinte's sales dropped to zero.  It stopped receiving orders from new customers and its existing customers stopped purchasing the Accused Garden Hose Products entirely.

136.    Telebrands had no legally justifiable basis for asserting its infringement reports against the Accused Garden Hose Products because it has no objectively plausible infringement claim or argument under either the '870 Patent or the '915 Patent.

137.    Telebrands knew or should have known that the Accused Garden Hose Products could not possibly infringe the '870 Patent or '915 Patent because Telebrands should have obtained at least one Accused Garden Hose Product sample from each accused customer.

138.    To the extent that Telebrands examined the Accused Garden Hose Products, Telebrands observed: (a) when the hose is subjected to pressure from a liquid inside the inner tube, the tube increases in length (longitudinally) but does not increase in width (laterally) – instead, when the hose is subjected to fluid pressure, the inner tube contracts in width; and (b) that the layers within the hose were fixed together between the two ends rather than movable relative to one another as required in every claim of the '870 and '915 Patents.

139.    To the extent that Telebrands failed to examine Accused Garden Hose Product samples from each accused seller, Telebrands was willfully blind to the fact that the Accused Garden Hose Products did not, and could not possibly, infringe the '870 or '915 Patents.

140.    In either event, Telebrands acted with intent and malice in causing Amazon to block all sales of the Accused Garden Hose Products based on a unjustifiable infringement claim.

141.    Telebrands acted with the intent to wrongfully block the Amazon sales of Xinte's customers and to interfere with Xinte's relations with these customers in the hopes of harming and/or eliminating the manufacturer of the Accused Garden Hose Products.

142.    Telebrands' legally unjustified and malicious actions have caused Xinte to lose all of its sales and prospective sales for the Accused Garden Hose Products and have forced Xinte to shut down its production of the Accused Garden Hose Products.

143.    As a result of Telebrands' actions, Xinte already has lost more than $6 million in sales and many of its customer relationships are damaged beyond repair.

144.    This business disruption has created a cash flow problem that is preventing Xinte from making timely payments to its suppliers.

145.    The factory shut-down caused by Telebrands' actions have forced Xinte to lay off or furlough approximately two hundred workers. If Xinte is unable to restart its Accused Garden Hose Products production soon, it risks losing all these employees. If it loses these employees, it would be unable to resume production without rehiring and retraining a large number of new employees.

146.    Since the Accused Garden Hose Products account for approximately half of Xinte's revenue, continued shut-down of that product line is unsustainable for the company. If Xinte is unable to resume this business soon, it likely will be forced out of business entirely.

147.    Telebrands' actions constitute tortious interference with prospective economic advantage under New Jersey common law.

## **REQUEST FOR RELIEF**

WHEREFORE, Xinte asks this Court to:

a.    Find that the Accused Garden Hose Products do not infringe the '870 Patent;

b.    Find that the Accused Garden Hose Products do not infringe the '915 Patent;

c.    Find that Telebrands is liable for tortious interference with contract;

d.    Find that Telebrands is liable for tortious interference with prospective economic advantage;

e.    Find that this case is an "exceptional case" under 35 U.S.C. § 285 and Xinte is entitled to its attorney fees;

f.    Award Xinte a permanent injunction enjoining Telebrands from asserting any patent in the '870 and '915 patent family against the Accused Garden Hose Products;

g.    Award Xinte damages sufficient to compensate it for Telebrands' tortious interference with contract and/or tortious interference with prospective economic advantage, together with costs and prejudgment interest;

h.    Award Xinte other and further relief as may be proper under the circumstances.

## DEMAND FOR JURY TRIAL

Xinte requests a trial by jury under Rule 38 of the Federal Rules of Civil Procedure of all

issues that may be determined by a jury.

Respectfully submitted,

Dated: August 21, 2024

/s/ _____

Mike A. Ortega

*Of Counsel:*

Powley & Gibson, P.C.
60 Hudson St., Suite 2203
New York, NY 10013
(212) 226-5054

Joseph L. Johnson (*pro hac vice* to be filed)
A. Justin Poplin (*pro hac vice* to be filed)
Avek IP, LLC
7285 W. 132nd Street, Suite 340
Overland Park, KS 66213
(913) 303-3841

*Counsel for Plaintiff*
*Yangjiang Xinte Sports Technology*
*Products Co., Ltd.*

## VERIFICATION

I, Zhiqiang Zhang, hereby declare and state that:

1.  I am the general manager and of Yangjiang Xinte Sports Technology Products Co., Ltd. ("Plaintiff" or "Xinte"). As such, I am authorized to make this affidavit on behalf of Xinte.

2.  Xinte is the lawful assignee of all right, title, and interest in and to United States Patent No. 11,519,526 ("the '526 Patent"), entitled EXTENSIBLE FLEXIBLE HOSE, AND METHOD FOR MANUFACTURING THEREOF. The '526 Patent was issued on December 6, 2022, and I am the first named inventor of the '526 Patent.

3.  I have read the forgoing verified complaint, and based on my personal knowledge and my knowledge of information reported to me by subordinates and colleagues who report to me, the factual allegations contained in the forgoing verified complaint are true.

I declare that all statements made herein are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment or both under 18 U.S.C. §1001.

_Zhiqiang Zhang_
Zhiqiang Zhang

Signed this __2/__ day of August 2024

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 201.1

Pursuant to Local Civil Rule 201.1, the undersigned counsel for Plaintiff certifies that the above captioned matter is not subject to compulsory arbitration in that Plaintiff seeks, *inter alia*, injunctive relief.

Respectfully submitted,

Dated: August 21, 2024

/s/ _____

Mike A. Ortega

*Of Counsel:*

Powley & Gibson, P.C.
60 Hudson St., Suite 2203
New York, NY 10013
(212) 226-5054

Joseph L. Johnson (*pro hac vice* forthcoming)
A. Justin Poplin (*pro hac vice* forthcoming)
Avek IP, LLC
7285 W. 132nd Street, Suite 340
Overland Park, KS 66213
(913) 303-3841

*Counsel for Plaintiff,*
*Yangjiang Xinte Sports Technology*
*Products Co., Ltd.*

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

I hereby certify that, to the best of my knowledge, the matter in controversy is not the subject of any other pending or anticipated litigation in any court or arbitration proceeding, nor are there any non-parties known to Plaintiff that should be joined to this action. In addition, I recognize a continuing obligation during the course of this litigation to file and to serve on all other parties and with the Court an amended certification if there is a change in the facts stated in this original certification.

Dated: August 21, 2024

*Of Counsel:*

Joseph L. Johnson (*pro hac vice* forthcoming)
A. Justin Poplin (*pro hac vice* forthcoming)
Avek IP, LLC
7285 W. 132nd Street, Suite 340
Overland Park, KS 66213
(913) 303-3841

Respectfully submitted,

/s/
Mike A. Ortega
Powley & Gibson, P.C.
60 Hudson St., Suite 2203
New York, NY 10013
(212) 226-5054

*Counsel for Plaintiff,*
*Yangjiang Xinte Sports Technology*
*Products Co., Ltd.*